MICHAEL BURKE, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.,*
Defendants-Appellees.

First District (5th Division)   No. 86—1075

Opinion filed September 4, 1987.

Lawrence P. Seiwert, of Chicago, for appellant.

Hugh G. McBreen, of McBreen & McBreen, of Chicago, for appellee City of Chicago.

Michael W. Tootooian, of Matyas & Norris, of Chicago, for appellee McKay Contractors, Inc.

Barbara L. Pence, of Law Offices of John M. Barnes, of Chicago, for appellee George J. Beemsterboer, Inc.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by plaintiff, Michael Burke, from a trial court's summary judgment in favor of all defendants in a fall-on-ice-and-snow negligence action.

On December 21, 1981, Burke, an employee of Northwest Airlines, slipped on ice and was injured as he exited a truck-stair vehicle he was using to deplane passengers from his employer's aircraft, Northwest Airlines, Inc. (Northwest), parked at gate C-3 at Midway Airport in Chicago, Illinois. In December 1982, Burke filed a negligence action against the city of Chicago to recover damages. He later filed an amended complaint adding McKay Contractors, Inc., and George J. Beemsterboer, Inc., as party-defendants. The city had hired McKay and Beemsterboer to remove snow by plowing at the airport. In a second amended complaint he charged the city, McKay, and Beemsterboer with:

(1) Failing to provide snow removal services, permitting dangerous ice accumulations to exist thereon.

(2) Failure to warn of a dangerous ice condition.

(3) Failure to properly remove snow, allowing dangerous ice accumulation to form.

In addition to the above, Burke charged the city with failure to spread or provide salt or urea in icy areas as required by an agreement with the airlines.

The various defendants filed motions for summary judgment. On January 15 and January 30, 1986, the trial court granted the summary judgments of McKay and Beemsterboer, respectively. On February 19, 1986, plaintiff filed his motion for summary judgment and his reply to the city's and the other defendant's motions. On March 25,

1986, judgment was entered in favor of the city and the other defendants. This terminated the litigation in the trial court. Plaintiff has appealed.

On appeal plaintiff raises three points:

(1) He contends all defendants had a duty to remove the snow accumulation from the site of plaintiff's injury.

(2) Questions of facts existed precluding the granting of summary judgments as to all defendants.

(3) The failure of the city to spread sand or urea at the site of plaintiff's injury constituted negligence as a matter of law, impelling the trial court to grant his motion for summary judgment and deny the city's motion.

The facts appearing in the record disclose the following: The defendant city owned and maintained Midway Airport in the city of Chicago, Illinois. It leased certain portions of the airport to Northwest Airlines, plaintiff's employer. Under the terms of the agreement, the city agreed to:

"operate, maintain and keep in good repair the areas and facilities described in [the lease] *** to keep the Airport free from obstruction, including the removal of snow, vegetation, stones and other foreign matter, as reasonably as may be done, from landing, take off, public ramp, and public parking areas."

The city contracted with McKay and Beemsterboer for the snow removal at the airport.

On December 21, 1981, in excess of two inches of snow fell at the airport. Temperatures ranged from 22° to 33° Fahrenheit. At about 4 p.m. the gate C-3 ramp was plowed. McKay had contracted with the city to plow the ramp at gate C-3. The only witness to the event was plaintiff, Burke. Burke testified in his discovery deposition that snow removal equipment plowed the gate C-3 ramp area between 4 p.m. and 4:30 p.m. No snow fell between that time and the time plaintiff slipped, fell and was injured at 7 p.m. that evening. The snow had turned to ice at the location of Burke's accident. Norton, the city airport manager, testified that the city had in the past spread sand and urea with its own equipment and personnel after snowplowing. However, there was no contractual obligation to do so.

■■ Plaintiff first argues that all the defendants had a duty to remove the snow and ice accumulation from the situs of his injury. The question of the existence of a legal duty is one of law to be decided by the court, while the question of whether a duty was properly performed is a question of fact to be determined by the fact finder. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.

■ All parties concede that in Illinois, including the sometimes icy and snowy, windy city of Chicago, a landlord has no duty to remove natural accumulations of ice and snow from areas within his control. (*Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 467 N.E.2d 947.) Plaintiff relies on an exception to this Illinois rule of nonliability in slip-and-fall cases on snow and ice which imposes a duty to use due care where the landlord had assumed the duty to remove snow and ice. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031.) In *Erasmus* a division of this court in affirming a trial court's granting the housing authority's motion for summary judgment held that a landlord's duty in removing snow was not to remedy a natural accumulation of snow or ice, but to prevent an unnatural accumulation of the snow or ice, whether the unnatural accumulation was caused by a negligent clearing operation or design deficiency.

■ In a case of first impression involving a condominium resident, rather than a Chicago public housing resident, a division of this court seems to have extended the duty of an owner, who assumed the duty of snow removal by virtue of a declaration of condominium and condominium bylaws, to remove snow and ice after a reasonable time for removal had elapsed; the duty arose under contract law rather than common law. (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168.) The court, however, did state in *Schoondyke*:

> "Where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed, and the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible." *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 643, 411 N.E.2d 1168, 1171, citing *Durkin v. Lewitz* (1954), 3 Ill. App. 2d 481, 491, 123 N.E.2d 151, 156.

■ In *Tressler v. Winfield Village Cooperative, Inc.* (1985), 134 Ill. App. 3d 578, 481 N.E.2d 75, the court followed the *Schoondyke* decision based on a contractual duty, but stated:

> "The mere presence of snow and ice does not demonstrate negligence on the landlord's part. On the other hand, if the defendant knew or should have known of the dangerous condition and failed to take proper steps to guard against it, he can be held liable." 134 Ill. App. 3d 578, 581, 481 N.E.2d 75, 77.

Even if this court followed the decision of the above two cases rather than cases such as *McCann v. Bethesda Hospital* (1979), 80 Ill.

App. 3d 544, 400 N.E.2d 16, and *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031, both of which involved snow removal and which held that owners or possessors of property are not liable in snow or ice slip-and-fall cases absent a showing of unnatural accumulation or design failure, this court would have to affirm the trial court's granting of summary judgment in favor of all defendants in this case.

Plaintiff's own deposition testimony shows that the area he slipped in was plowed earlier and no snow fell after the plowing. The area he fell in consisted of wet snow that had turned to ice. There is no evidence indicating that the snow that turned to ice was a result of piling, bad design of the ramp, or other acts of negligence by the plowers.

In *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168, the evidence showed that the snow had fallen in the morning and no plowing had occurred by evening, when plaintiff fell. In *Tressler v. Winfield Village Cooperative, Inc.* (1985), 134 Ill. App. 3d 578, 481 N.E.2d 75, there was no plowing and plaintiff in her deposition stated that she had requested the landlord to clear the walks prior to her fall. Both cases involved no plowing at all, not a defective plowing. In order to deduce defective plowing in this case, the court would have to conclude that the city or its contractors had a duty to remove all the snow during the plowing operation. That is not the duty assumed by its lease with Northwest Airlines, Burke's employer. The duty that was assumed by the lease was removal of snow, etc. "as reasonably may be done."

The record in this case does not disclose how or why the wet snow turned into the ice upon which Burke slipped and injured himself, whether by a defective snow removal operation or by a natural accumulation after the plowing. Absent evidence of an unnatural accumulation or negligent plowing operation, there is no showing of breach of an existing duty by any of the defendants. Burke also relies on the fact that the city had failed to throw salt or urea in the area as a breach of the city's duty. Burke relies on the fact that the city had in the past voluntarily thrown salt or urea on the airport and had been requested to do so the day of the occurrence.

■ Courts have held landowners liable where the execution of a gratuitous undertaking created a physical hazard causing injury. (*Sims v. Block* (1968), 94 Ill. App. 2d 215, 236 N.E.2d 572.) On the other hand, courts have also held that the gratuitous performance of clearing snow and/or spreading of salt does not create a continuing duty to perform the function. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999,

365 N.E.2d 80.) In other words, Illinois law is fairly clear that the negligent performance of a gratuitous undertaking would impose liability for injuries proximately resulting therefrom, but the mere reliance by a party upon defendants' gratuitous performance in the past, without more, is insufficient to impose any duty thereafter. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1007, 365 N.E.2d 80; *Cronin v. Brownlee* (1952), 348 Ill. App. 448, 109 N.E.2d 352; see *Spack v. Longwood Apartments, Inc.* (1959), 338 Mass. 518, 155 N.E.2d 873.) To the same effect is the recent decision of this court in *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 488 N.E.2d 679.

█ The record in this case fails to show the existence of a duty of any of the defendants in connection with the snow or ice upon which plaintiff fell and was injured, or a breach of such duty. Accordingly, the trial court properly granted summary judgments for all defendants and properly denied plaintiff's motion for summary judgment.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.